# In the United States Court of Federal Claims

No. 18-1483C
(Filed: March 26, 2019)[1]

|  |  |
|---|---|
| XOTECH, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>    Defendant. | Bid Protest; Pre-award Protest; Judgment on the Administrative Record; OHA Appeal; Service-Disabled-Veteran-Owned. |

*William T. Welch,* Reston, VA, for plaintiff, LLC. *J. Patrick McMahon* and *Peter A. Fish*, Reston VA, and *Daniel R. Forman*, and *John E. McCarthy, Jr.*, Washington, D.C., of counsel.

*Eric E. Laufgraben,* Civil Division, United States Department of Justice, Washington, D.C., with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Allison Kidd-Miller*, Assistant Director, for defendant. *Beveryley Hazelwood,* Trial Attorney, Office of General Counsel, U.S. Small Business Administration, Washington, D.C., and *Wayne T. Branom III*, Major, U.S. Army, Trial Attorney, U.S. Army Legal Services Agency, Contract & Fiscal Law Division, Ft. Belvoir, VA, of counsel.

## OPINION

**FIRESTONE**, *Senior Judge*

  Pending before the court in this bid protest are cross motions for judgment on the administrative record. In this action, the plaintiff, XOtech, LLC, ("XOtech") challenges the Small Business Administration ("SBA") Office of Hearings and Appeals' ("OHA")

---

[1] This opinion was originally issued under seal on March 21, 2019.

determination that XOtech is ineligible to compete for contracts set aside for service-disabled-veteran-owned ("SDVO") contractors because XOtech does not satisfy the regulatory requirement that a service-disabled veteran control "all decisions of the limited liability company" as required by 13 C.F.R. § 125.13(d).[2] For the reasons that follow, the court finds that the OHA decision is supported and is thus affirmed. Accordingly, the government's motion for judgment on the administrative record is **GRANTED** and the plaintiff's motion for judgment on the administrative record is **DENIED**.

## I.  FACTUAL BACKGROUND

### A.  Regulatory Background

To compete for a government contract as a SDVO limited liability company ("LLC"), a service-disabled veteran must own *and* control the company. 15 U.S.C. § 632(q)(2)(A)-(B).[3] As implemented by the SBA regulations, separate regulations define ownership and control for LLCs. 13 C.F.R. §§ 125.12, 13. To show ownership for a LLC, one or more service-disabled veterans must "unconditionally and directly" own at least 51 percent "of each class of member interest[.]" *Id.* § 125.12(c). Regarding control, the SBA regulations provide different requirements depending on the company's

---

[2] 13 C.F.R. § 125.13(d) states "Control over a limited liability company. In the case of a limited liability company, one or more service-disabled veterans (or in the case of a veteran with permanent or severe disability, the spouse or permanent caregiver of such veteran) must serve as managing members, with control over all decisions of the limited liability company."

[3] 15 U.S.C. § 632(q)(2) defines "small business concern owned and controlled by service-disabled veterans" as "a small business concern (A) not less than 51 percent of which is owned by one or more service-disabled veterans" and "(B) the management and daily business operations of which are controlled by one or more service-disabled veterans[.]"

corporate form. *Id.* § 125.13(c)-(e). Specifically, whereas here, a LLC should demonstrate control by a service-disabled veteran by showing that the service-disabled veteran: (1) conducts the company's "long-term decisions making"; (2) conducts the company's "day-to-day management and administration of the business operations"; (3) holds the company's highest officer position; (4) serves as the company's managing member; and (5) controls "all decisions of the limited liability company." 13 C.F.R. § 125.13(a), (b), (d). In addition, the regulation provides that "[o]ne or more service-disabled veterans must meet all super majority voting requirements." *Id.* at § 125.13(f).

### B. XOtech's Operating Agreement

XOtech organized itself as a LLC under the Georgia Limited Liability Company Act ("Georgia LLC Act"). Administrative Record ("AR") 89, 105. Under the Georgia LLC Act, limited liability companies are either "Member-Managed" or "Manager-Managed." Ga. Code § 14-11-304(a)-(b). In a "Member-Managed" company, the Members (i.e. owners) possess the "right and authority to manage the affairs of the limited liability company and to make all decisions with respect thereto." *Id.* § 14-11-304(a). In a "Manager-Managed" company, one or more Managers possesses the authority to run the company's affairs and make decisions on its behalf. *Id.* § 14-11-304(b).

XOtech had been originally organized as a Member-Managed company. AR 105 ("The management of this limited liability company is reserved to the member manager Gary Marullo."). Through restatements of its corporate governance documents, XOtech transformed itself from a Member-Managed company into a Manager-Managed

3

company. AR 88, 159-60. Until 2012, XOtech operated with a single Manager: Gary Marullo, the service-disabled veteran. AR 160 ("The Company shall have one (1) Manager . . . . The initial Manager shall be the Senior Member, Gary Marullo."). In XOtech's Second Amended and Restated Operating Agreement (as amended) ("Operating Agreement"), dated January 1, 2012, XOtech elected to transform its governance, from a single-Manager structure into a multiple-Manager structure. AR 123, 133.

Pursuant to the Operating Agreement, XOtech's Members are its owners. AR 126. The Members share in the distribution of XOtech profits, AR 135, they may contribute capital to XOtech, AR 129-30, and they possess authority to make significant corporate decisions. AR 132. Specifically, only Members may vote on "(a) the sale, exchange, lease or other transfer or disposition of all, or substantially all, of the Company's assets outside of the ordinary course of business, and (b) any reorganization, merger, liquidation, recapitalization or liquidation of the Company." AR 132.

Members' voting units correspond to their respective ownership percentages. AR 113. According to a recent Operating Agreement amendment, the chart below identifies XOtech's Members, their respective ownership percentages, and their voting units:

| Member | Ownership Percentage | Voting Units |
|---|---|---|
| Gary Marullo | 90.28 | 90,280 |
| Kathy Marullo | 3.72 | 3,720 |
| Jena Marullo-Webb | 2.0 | 2,000 |
| Joshua Marullo | 4.0 | 4,000 |

AR 113.  Given that Gary Marullo owns over 90 percent of XOtech voting units, he is the Senior Member and he controls the decisions subject to a Member vote.  AR 127, AR 132; *see also* AR 109 (identifying Gary Marullo as XOtech's "Senior Member").

The Operating Agreement distinguishes between the times when Members must vote on significant corporate decisions and when XOtech's managers can make decisions. Under the Operating Agreement, XOtech's Managers together possess "full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding such matters and to take all action necessary or convenient to carry out the business and affairs of the Company."  AR 132. The Operating Agreement grants Managers responsibility for nearly all XOtech business decisions, including:

    (1)    opening bank accounts and making deposits and withdrawals;

    (2)    binding XOtech to contracts;

    (3)    hiring employees, consultants, and agents;

    (4)    procuring insurance;

    (5)    prosecuting or defending any proceeding in XOtech's name;

    (6)    borrowing money for XOtech from banks, Managers, or other Members, to include granting security interests in XOtech's assets to secure loan repayment;

    (7)    determining the amounts and timing of distributions to Members;

    (8)    approving tax methods and practices, and Federal income tax elections.

AR 132, 135-37.

The Operating Agreement grants to each manager one vote. According to the most recent Operating Agreement amendment, the chart below reflects XOtech's Managers and the number of votes each holds:

| Manager | Number of Votes |
|---|---|
| Gary Marullo | One |
| Kathy Marullo | One |
| Joshua Marullo | One |

AR 109, 133 ("Each Manager shall be entitled to one vote.").

Gary Marullo, the service-disabled veteran shares XOtech management authority equally by vote with two, non-service-disabled veterans: Kathy Marullo (his wife) and Joshua Marullo (his son).  AR 109, 133.  Under XOtech's Operating Agreement, a majority Manager vote is needed for a given management decision. *See* AR 109, 133. Under Section 6.06 of the Operating Agreement, a "Manager must exercise his or her vote in person and cannot act by proxy." AR 133. The Operating Agreement reserves certain decisions to the Members. AR 133. These are listed in Section 6.03 of the Operating Agreement to include (a) "the sale, exchange, lease or other transfer of all of the Company's assets outside the ordinary course of business" and (b) "any reorganization, merger, or liquidation of the Company." AR 132.  The Operating Agreement under Section 6.04 also provides that the Members, from time to time, may fix the precise number of Managers and that Managers hold their office "until the first to occur of the death, resignation, incapacity, or removal of such Manager." AR 133. Section 6.10 of the Operating Agreement provides: "Removal of Manager. At a meeting called expressly for that purpose a Manager may be removed at any time, without or

without cause, by the affirmative vote of a Majority Interest." *Id.* Thus, under Section 6.10 Gary Marullo can remove his wife and son as Managers at any time.

### C. The SBA Determination

XOtech submitted a proposal in response to Army Solicitation No. W911SA-17-R-3001, which sought a SDVO contractor to provide logistics support services to Army Reserve facilities in Arizona, New Mexico, Texas, Oklahoma, and Arkansas.  Compl. ¶ 2. XOtech has served as a SDVO contractor in the past. However, after the Army awarded the subject contract to XOtech, two losing competitors protested to the Government Accountability Office ("GAO"), after which the Army took corrective action and reevaluated proposals.  *Id*. ¶ 9 n.1.  One of those losing competitors also protested XOtech's award to the SBA Area Office, alleging, among other things, that XOtech is ineligible for SDVO status because non-service-disabled veterans own and/or control XOtech.  *Id.* ¶ 10.

The SBA Area Office referred the ownership and control allegations to the SBA's Office of Government Contracting for a decision on XOtech's SDVO status.  *Id.* ¶ 12. Although the Director of SBA's Office of Government Contracts determined that a service-disabled veteran, Gary Marullo, *owned* XOtech, the Director determined that XOtech was not SDVO because Gary Marullo lacked sufficient *control* over the company's day-to-day operations.  AR 2007-2011.  In particular, the Director explained that Gary Marullo lacked independent control over XOtech management because Gary Marullo, under the terms of the Operating Agreement, needs the vote of one of the two non-service-disabled veteran Managers, Kathy Marullo and Joshua Marullo, to make

XOtech management decisions. AR 2010-11 (citing AR 133).  In this connection, the Director determined that the Operating Agreement does not designate officers and thus the SBA Director could not find that a service-disabled veteran held the highest officer position in XOtech. AR 2010.

XOtech appealed the Director's decision to OHA.  Finding no clear error of fact or law, OHA affirmed.  AR 2053-62. In its decision OHA examined XOtech's various arguments challenging the Director's decision, including XOtech's claim that the Director overlooked Gary Marullo's designation as the "Senior Member" in the Operating Agreement, which XOtech argued meant that as the majority owner of XOtech Gary Marullo in fact controls the firm. AR 2058-59. According to XOtech this was reflected by examining the signatures to the Operating Agreement and its amendments which were signed only by Gary Marullo as "manager." AR 2058.  In affirming the Director, OHA explained that under the applicable regulations, day-to-day control of a SDVO LLC must be in the hands of the service-disabled veteran. AR 2060. Thus, the service-disabled veteran "must hold the highest officer position in the concern." AR 2060 (citing 13 C.F.R. § 125.13(b)). Here, OHA explained, under the terms of the Operating Agreement, "each of [the 3 managers] has full authority to manage and control [XOtech's] business. The Managers have the power to enter into contracts, engage employees, obtain insurance, conduct litigation, and borrow money. The Managers have the power to open bank accounts . . . and to make deposits and withdrawals." AR 2061. Thus, Gary Marullo was not in sole control of all day-to-day business decisions. AR 2062. OHA acknowledged that Gary Marullo is XOtech's "Senior Member" with his

90.28% ownership and voting interest. AR 2061. However, OHA determined that "this does not alter the fact that [XOtech's] Operating Agreement designates multiple managers and gives them extensive authority to manage the day-to-day operations of the business. When there is voting by Managers, each Manager is entitled to only one vote, and Gary Marullo is only one of three. Operating Agreement 6.06." *Id*. For these reasons OHA concluded that Gary Marullo "does not have the power to make all the decisions of the company" and affirmed the Director's determination that XOtech is not an eligible SDVO small business. AR 2062.

Eleven days after the OHA decision was issued, XOtech filed this protest.[4] Briefing was completed on December 21, 2018. The plaintiff moved to file a surreply on February 15, 2019 (ECF No. 21) and the court granted the plaintiff's request on February 19, 2019 (ECF No. 22). Oral argument was held on March 19, 2019.[5]

## II.  STANDARD OF REVIEW

This court reviews bid protests using the standard of review set forth in the Administrative Procedure Act ("APA"); thus, it will grant relief only when the agency action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  28 U.S.C. § 1491(b)(1), (4); 5 U.S.C. § 706(2)(A).  This court gives "special deference" to OHA decisions "because of the SBA's 'quasi-technical administrative

---

[4] The United States has informed the court that the Army has withheld its award and corrective action pending resolution of XOtech's protest.

[5] Proceedings in this matter were delayed due to the federal government shut-down. At the government's request a stay was granted on January 4, 2019 (ECF No. 18) and was not lifted until February 7, 2019 (ECF No. 19) and the parties agreed to the argument date above.

9

expertise and [its] familiarity with the situation acquired by long experience with the intricacies inherent in a comprehensive regulatory scheme.'" *Team Waste Gulf Coast LLC v. United States*, 135 Fed. Cl. 683, 687 (2018) (quoting *LB & B Assocs., Inc. v. United States*, 68 Fed. Cl. 765, 771 (2005)) (alteration in original). Accordingly, "[r]eversal is limited to those situations where OHA has acted irrationally or has erroneously applied relevant procurement law." *Id*. (citing *Eagle Design & Mgmt., Inc. v. United States*, 57 Fed. Cl. 271, 273 (2002)).

### III. DISCUSSION

**XOtech Is Not A SDVO Because Its Operating Agreement Permits Non-Service-Disabled Veterans To Control XOtech Management Decisions**

There is no dispute in this case that Gary Marullo *owns* XOtech through his 90.28 percent stake in the company. The sole issue before the court is whether OHA erred in concluding that Gary Marullo does not control XOtech's day-to-day decisionmaking under the terms of the Operating Agreement. OHA concluded that XOtech does not qualify as a SDVO LLC because Gary Marullo does not have "control over all decisions of the limited liability company." AR 2062. As discussed, OHA determined that because Gary Marullo shares equal authority over XOtech management decisions with two non-service-disabled veterans, his wife and son, Gary Marullo does not possess independent control over "all" of XOtech's decisions. AR 2061-62. The court finds that OHA decision is both factually and legally supported and thus must be affirmed.

It is well-settled under SBA and OHA precedent that if any portion of a service-disabled veteran's decision-making authority over a LLC requires the vote of a non-

service-disabled veteran, the service-disabled veteran lacks control over "all decisions" of the company. Several of these cases were cited by OHA including *Valor Contracting LLC*, SBA No. VET-194, 2010 WL 2406616, at *6 (May 28, 2010), in which the SBA determined that although the service-disabled veteran's vote was necessary to achieve a supermajority for certain limited liability company decisions, the company was not a SDVO LLC because the service-disabled veteran could not make those decisions unilaterally and thus he lacked "control" over the company. Similarly in *Firewatch Contracting of Fla. LLC*, SBA No. VET-137, 2008 WL 3995876, at *5-6 (Aug. 1, 2008), the SBA found that a company was not a SDVO even though the service-disabled veteran was the "Managing Member" of the limited liability company because he did not control "all decisions" when the Operating Agreement imposed supermajority voting requirements for certain hiring, firing, and compensation decisions.

     XOtech's Operating Agreement is similar to the agreements at issue in the two cases noted above and XOtech has failed to distinguish those cases from its own circumstance. XOtech's Operating Agreement is fatal to its case because as OHA explained in *Benetech LLC*, "control over all decisions" literally means that the service-disabled veteran has "independent" authority to make "all decisions" on the company's behalf. *Benetech LLC*, SBA No. VET-225, 2011 WL 5419689, at *7 (Nov. 3, 2011). In *Benetech LLC*, OHA determined that where the service-disabled veteran shared equal authority over Member decisions with non-service-disabled veterans, he lacked the requisite control over "all decisions." *Id*. In this case, OHA examined XOtech's Operating Agreement and found that under its terms, management decisions need the

11

approval of at least two members. The Operating Agreement requires Gary Marullo to have the vote of one of the other two members to make a management decision.  AR 2062.  Moreover, under the terms of the Operating Agreement, the two other members can also make binding management decisions. As OHA explained in its decision, XOtech has "organized itself so that two Managers who are not service-disabled veterans have the authority to make many of the day-to-day decisions on the operation and administration of the company." *Id*.  Indeed, XOtech concedes that "[t]he relevant provision of the Operating Agreement [section 6.01, Management by Managers] grants the [M]anagers *as a group the collective authority*" to make day-to-day business decisions.  Pl.'s Mot. at 14-15 (emphasis added); *see also id*. at 15 ("the Managers are granted authority *as a group* and not individually.") (emphasis added). XOtech explains this arrangement in its brief as follows, "the only authorized way individual Managers can act is to appear at a properly noticed meeting with the other Managers and to vote in person[.]" *Id.* at 15.  Because Manager decisions require a majority vote, any Manager, including Gary Marullo requires the vote of another Manager before making such a decision.  And whatever combination of Managers make a given decision, the parties agree that Gary Marullo cannot make the decision alone.  *See id.* at 11, 14-15.  It is for this reason, that XOtech does not satisfy the regulatory requirement that a service-disabled veteran "control . . . all decisions of the limited liability company."  13 C.F.R. § 125.13(d); AR 2061-62.

Additionally, XOtech's effort to distinguish *Benetech LLC* is not persuasive.  *See* Pl. Mot. at 16-17; AR 2060. XOtech argues that *Benetech LLC* is inapposite because in that case a non-service-disabled veteran "actually exercised [management] authority,"

while in this case, XOtech alleges that there is no evidence that either Kathy Marullo or Joshua Marullo actually exercise his or her Manager authority. Pl. Mot. at 19. Whether Kathy or Joshua Marullo in fact exercise their Manager authority under the Operating Agreement does not distinguish this case from *Benetech LLC*. The fact remains that under the Operating Agreement Gary Marullo needs the approval of one of them to make a management decision on his own. AR 109.[6] To the extent that the Operating Agreement does not in fact reflect how management decisions are made in reality at XOtech, the Operating Agreement needs to be changed but the court must follow the terms in the agreement. Indeed, as noted above in the Background Facts Section, Gary Marullo was at the outset the only "manager" for XOtech. Sometime thereafter, XOtech amended the Operating Agreement to allow for four managers and now XOtech has three each with an equal vote. XOtech is bound by the terms of its agreement until it is changed.

XOtech's reliance on Gary Marullo's supermajority vote is also misplaced. XOtech notes that in another SBA decision, *Heritage of America LLC,* the SBA determined that a service-disabled veteran did not control all decisions because he only owned 51 percent of the company and did not have supermajority. *Heritage of Am. LLC*, SBA No. VET-142, 2008 WL 5192403, at *8 (Nov. 12, 2008). XOtech argues that

---

[6] XOtech makes much of the fact that Gary Marullo signed the Operating Agreement as the "manager." However, the court notes that Joshua Marullo alone signed the answers to the questions asked by the SBA regarding XOtech's Operating Agreement on behalf of XOtech without his father's signature. *See* AR 2020-25. Thus, Gary Marullo is not the only manager authorized to speak for XOtech.

13

because Gary Marullo owns over 90 percent of XOtech and has a supermajority, he is effectively in control. While, XOtech is different from *Heritage of Am. LLC*, the distinction does not change the outcome. Regardless of his supermajority authority, the fact remains that under the Operating Agreement he holds only one of three *Manager* votes. AR 109, 133.

XOtech's reliance on Section 6.10 of the Operating Agreement, which gives Gary Marullo the authority to remove either or both Kathy Marullo and Joshua Marullo on his own is also misplaced. OHA determined that where the corporate governance documents require a non-service-disabled veterans' vote on management decisions, the SDVO LLC regulatory requirements are not met. The fact that Gary Marullo can fire either or both of the Managers as the super majority Member under Section 6.10 of the Operating Agreement does not alter this result.[7] The problem with XOtech's removal authority argument is that authority does not undo binding decisions of either of those two managers before they are removed. As the government explains, Kathy Marullo and Joshua Marullo could vote for and sign a five-year automobile lease over Gary Marullo's objection. While it is true that Gary Marullo as the Senior Member could remove his wife and son as Managers, XOtech still would remain bound to the lease because the

---

[7] The government argues that XOtech should not be allowed to raise Gary Marullo's rights under Section 6.10 of the Operating Agreement because it was not expressly raised before OHA and thus the argument was waived. The court finds the argument was not waived. XOtech expressly identified Gary Marullo's status as the majority owner as the grounds for its appeal from the SBA Director's decision to OHA. While Section 6.10 was not expressly identified, the argument regarding Gary Marullo's status as majority owner was made and was broad enough to cover all aspects of that authority.

Operating Agreement permits Kathy Marullo and Joshua Marullo as Managers to authorize and execute such contracts. AR 132-33.[8]

It is also for this reason that XOtech's reliance on *Alpha Terra Eng'g, Inc.*, SBA No. VET-238, 2013 WL 5428853 (Sep. 12, 2013), is misplaced. *Alpha Terra* concerned a separate regulatory provision about control over a corporation. *Id.* at *1. *Compare* 13 C.F.R. § 125.13(d) (Control over limited liability companies), *with id.* § 125.13(e) (Control over corporations).[9]  In *Alpha Terra Eng'g, Inc.*, OHA was asked to construe 13 C.F.R. § 125.10(e) (Control over a corporation), which required that service-disabled veteran: (1) own at least 51 percent of voting stock; (2) sit on the board of directors; and (3) remain free from any super-majority voting requirements. *Alpha Terra Eng'g, Inc.*, SBA No. VET-238 at *5. Because the service-disabled veteran satisfied all three regulatory criteria, OHA determined that the veteran "controlled" the corporation. *Id.* In responding to XOtech's argument that non-service-disabled veteran board members had control because they could assert negative control by blocking a quorum, OHA observed that the non-service-disabled board members did not have control because the service-

---

[8] At oral argument, the plaintiff conceded that Kathy and Joshua Marullo together could make an agreement without Gary Marullo that would be binding on XOtech unless and until it was later reversed by Gary Marullo after they were removed as managers. Oral Arg. 10:58:23-10:58:30; Oral Arg. 10:42:39-10:42:55.

[9] In *Alpha Terra Engineering, Inc.*, the administrative judge examined 13 C.F.R. § 125.10(e), which was superseded in 2016 by 13 C.F.R. § 125.13(e). For the sake of consistency, the court refers to the prior regulation. Nonetheless, both 13 C.F.R. § 125.10(e) and 125.13(e) concern service-disabled veteran control over corporations, not limited liability companies.

disabled veteran could remove those board members. *Id.* XOtech argues the same is true in this case. However, the situations are not the same. Gary Marullo does not have the ability to assert negative control over management decisions by refusing to meet on decisions of the other two managers. Rather, Gary Marullo's wife and son can exercise independent control over XOtech decisions until Gary Marullo removes them as XOtech Managers. Put another way, until they are removed they share management authority with Gary Marullo as two of the members of the management group and in that capacity they can act without his vote. *See infra* footnote 8.

The court finds that XOtech's claim that Gary Marullo is XOtech's Chief Executive Officer and has ultimate decision-making authority because he has delegated decision-making authority to other disabled veterans in XOtech is without merit. To begin, XOtech cannot point to any corporate governance document identifying Gary Marullo as the Chief Executive Officer, defining his duties, or reflecting authorization to grant Gary Marullo the independent authority to delegate Manager decisions to employees. Under the Operating Agreement, XOtech Managers may "ratify and approve any action taken on behalf of the Company by any of its employees or agents." AR 132. The authority to ratify management decisions by employees, however, rests with the Managers "as a group," not to Gary Marullo alone.

## CONCLUSION

For the foregoing reasons, XOtech's Motion for Judgment on the Administrative Record (ECF No. 11) is **DENIED** and the United States' Cross-Motion for Judgment on the Administrative Record (ECF No. 14) is **GRANTED**.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge
